**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **HUASCAR RIJSSENBECK,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **CIVIL ACTION No. 4:25-cv-5786** |
| § | |
| **SPARK BIOMEDICAL, INC.,** § | |
| § | |
| Defendant. § | |

**MOTION TO COMPEL ARBITRATION AND TO STAY THE CASE**

COMES NOW, Defendant, Spark Biomedical, Inc. ("Spark Biomedical" or "Defendant"), and files this Motion to Compel Arbitration and to Stay the Case and respectfully states as follows:

**I.**

**SUMMARY OF THE MOTION**

1. Spark Biomedical and Plaintiff Huascar Rijssenbeck ("Plaintiff") are parties to the Spark Biomedical Consulting Agreement (the "Consulting Agreement") that, among other things, dictates the services that Plaintiff was to provide and the payment for those services. Plaintiff filed this lawsuit claiming that he was paid incorrectly and should have been paid overtime. Defendant is filing counterclaims seeking to recover monies from Plaintiff for, among other things, improper and inflated invoices that were sent relating to the Consulting Agreement.

2. The Consulting Agreement requires that disputes that arise between the parties relating to the Consulting Agreement "shall be submitted to final and binding arbitration under the then current Commercial Arbitration Rules of the American Arbitration Association." The disputes in this matter relate to the Consulting Agreement and should be sent to arbitration. Therefore, this motion should be granted.

1

## II.

## SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND

**A.     The Consulting Agreement Between Plaintiff and Defendant**

3.      Spark Biomedical provides drug-free treatment options through wearable neurostimulation technology in the areas of mental health, women's health, hemostasis and pediatrics.

4.      Spark Biomedical originally tried to bring Mr. Rijssenbeck on as an employee. However, he refused and requested that Spark Biomedical instead contract with him and his company as an independent contractor to perform certain services.

5.      On or about June 9, 2025, Spark Biomedical and Mr. Rijssenbeck entered into the Consulting Agreement whereby Mr. Rijssenbeck or those that may assist him would be paid for Services, as that term is defined in Section 2 of the Consulting Agreement (the "Services"). *See* Spark Biomedical Consulting Agreement, attached as Exhibit A-1, ¶ 2. [1]

6.      Mr. Rijssenbeck requested that all payments for the services be paid to what he claimed was his company, Third-Party Defendant Global X MGT LLC.[2] *See* Exhibit A-2. This entity was included next to Mr. Rijssenbeck's name in the Consulting Agreement that was signed by Mr. Rijssenbeck. Exhibit A-1, p. 1.

7.      The Consulting Agreement provides that, except for a scenario involving injunctive relief, any dispute arising out of or relating to the Consulting Agreement shall first be attempted to be resolved via a meeting between the parties and then "**shall be submitted to final and binding**

---

[1] Exhibit A (and it's A-1 and A-2) is attached hereto and incorporated herein.
[2] Spark Biomedical will be filing counterclaims and a third-party complaint with its answer on the same day this motion is filed. Because those claims will have been filed by the time the Court considers this motion, this motion is being drafted in a way that discussing those claims as well.

**arbitration** under the then current Commercial Arbitration Rules of the American Arbitration Association ("AAA")." Exhibit A-1, ¶ 8 (emphasis added).

**B.  Litigation commenced relating to and arising out of the Consulting Agreement.**

8. On December 3, 2025, Plaintiff filed this lawsuit. Doc. No. 1.

9. On December 3, 2025, Plaintiff also filed Plaintiff's First Amended Complaint. Doc. No. 4.

10. In Plaintiff's First Amended Complaint, Plaintiff alleges that Spark Biomedical violated the Fair Labor Standards Act ("FLSA"). Doc. No. 4, ¶¶ 40-43. Plaintiff cites to the Consulting Agreement as the basis for venue of this lawsuit. *Id.* at ¶ 9.

11. On the same day as this filing, Spark Biomedical is filing counterclaims against Plaintiff and a third-party complaint against Third-Party Defendant Global X MGT LLC. Those claims include, among other things, a cause of action for breach of the Consulting Agreement.

**C.  Spark Medical Demands Arbitration.**

12. In January 2026, counsel for Spark Biomedical communicated with counsel for Plaintiff both verbally and in writing to request arbitration.

13. Counsel for Plaintiff indicated that his client would agree to arbitration only if Spark Biomedical agreed to revise the Consulting Agreement to where the arbitration was ***not*** pursuant to the Commercial Arbitration Rules of the AAA (as specifically required in the Consulting Agreement) but instead pursuant to employment rules and if Spark Biomedical would agree to modify a provision regarding costs relating to the arbitration. Spark Biomedical is not agreeable to changing the provisions that the parties agreed to in the Consulting Agreement.

### III.

### ARGUMENT & AUTHORITIES

14. A party seeking to compel arbitration must establish that there is a valid agreement to arbitrate and that the claims are within the scope of the agreement. *See Global Industrial Contractors, LLC v. Red Eagle Pipeline, LLC,* 617 F.Supp.3d 633, 635 (S.D. Tex 2022); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005). The presumption in favor of arbitration arises once the party seeking to compel arbitration proves that a valid arbitration agreement exists. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737-38. While an arbitration agreement need not be in any particular form, it must clearly appear that the parties intended to submit their dispute to arbitration and to be bound by that decision. *Wetzel v. Sullivan, King & Sabom, P.C.,* 745 S.W.2d 78, 81 (Tex. App.-Houston [1st Dist.] 1988, no writ).

**A.  A valid contract to arbitrate exists between Plaintiff and Spark Biomedical.**

15. The Consulting Agreement is signed by Plaintiff and Spark Biomedical and contains a valid and enforceable arbitration provision. It is indisputable that the Consulting Agreement contained an arbitration provision. *See* Exhibit A-1, ¶ 8. Specifically, the Consulting Agreement provides that, except for a scenario involving injunctive relief, any dispute arising out of or relating to the Consulting Agreement shall first be attempted to be resolved via a meeting between the parties and then "**shall be submitted to final and binding arbitration** under the then current Commercial Arbitration Rules of the American Arbitration Association ("AAA")." *Id.* (emphasis added).

**B. Plaintiff's claims against Spark Biomedical fall within the scope of the arbitration clause.**

16. As an initial matter, "[o]nce a valid arbitration agreement is established, a 'strong presumption favoring arbitration arises' and [courts] resolve doubts as to the agreement's scope in favor of arbitration." *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013)

17. Plaintiff's FLSA claim against Spark Biomedical is clearly arbitrable as it arises out of and relates to the Consulting Agreement. When determining whether a claim falls within the scope of an arbitration agreement, a court must look to the factual allegations asserted, not the legal claims. *Rachal*, 403 S.W.3d at 850; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) ("To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action asserted."). A claim is not subject to arbitration "only if the facts alleged in support of the claim are completely independent of the contract and the claim could be maintained without reference to the contract." *Glassell Producing Co., Inc. v. Jared Res., Ltd.*, 422 S.W.3d 68, 77 (Tex. App.—Texarkana 2014, no pet.) (emphasis added) (c*iting Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). Courts should resolve doubts as to the agreement's scope in favor of arbitration. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011).

18. In this case, Plaintiff alleges that he should have been treated as an employee rather than an independent contractor and that he, instead of his company, should have been paid one-half more than the amount that is called for in the Consulting Agreement for any hours where he allegedly worked more than 40 hours per week. *See* Doc. No. 4, ¶¶ 29-31, 41; *see also* Exhibit A-1, ¶ 5. It is undisputable that the Services to be provided by Plaintiff and the compensation relating to same relate to and arise out of the Consulting Agreement. Therefore, disputes regarding the

amount of compensation clearly involve the Consulting Agreement and require reference to the Consulting Agreement. Plaintiff also recognizes that his claim arises out of and relates to the Consulting Agreement because he cites to the Consulting Agreement as the basis for venue of this lawsuit. Doc. No. 4, at ¶ 9.

19. The section of the Consulting Agreement with the arbitration mandate broadly applies to any dispute that "arises between the parties relating to this [Consulting] Agreement." The parties were first to meet and attempt to resolve such disputes and then, if not resolved, the dispute "shall be submitted to final and binding arbitration." Texas courts recognize that terms of this nature are broad in scope and must be given a broad construction. *See My Cafe-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no pet.) (construing term "any dispute arising under or in connection with" broadly as encompassing any dispute connected to or relating to the agreement); *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067–68 (5th Cir. 1998).

20. In addition, the arbitration shall be conducted in accordance with the terms set forth in the arbitration agreement. *Global Industrial Contractors, LLC,* 617 F.Supp.3d at 635 (observing that the Federal Arbitration Act requires that courts "enforce privately negotiated agreements to arbitrate, like other contractors, in accordance with their terms").

21. Plaintiff's claim clearly arises from and/or is related to the Consulting Agreement. Accordingly, this Honorable Court should order that the Parties arbitrate this matter under the Commercial Arbitration Rules of the AAA, as required by the Consulting Agreement.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Spark Biomedical, Inc. respectfully requests that this Honorable Court grant this motion and compel arbitration and order that such arbitration

occur pursuant to the Commercial Arbitration Rules of the AAA, as contractually agreed, stay this lawsuit while the arbitration is accomplished, and for all other relief to which Spark Biomedical, Inc. may show itself justly entitled, both as a matter of law and/or equity.

Dated:  February 15, 2026         Respectfully Submitted,

**MCFADDEN TRACHTENBERG PLLC**

By:      /s/ *Randy Bruchmiller*_____
    Randy J. Bruchmiller
    State Bar No. 24031889
    S.D. Texas: 30079
    4200 Montrose, Suite 300
    Houston, Texas 77006
    (512) 368-8183 (Telephone)
    (832) 442-5430 (Facsimile)
    randy@greatlaw.com

**ATTORNEYS FOR DEFENDANT
SPARK BIOMEDICAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record through (i) this court's ECF method, (ii) facsimile, and/or (iii) via the United States Postal Service, on this 15th day of February, 2026.

    /s/ *Randy Bruchmiller*_____
    Randy J. Bruchmiller