Exhibit A

## DECLARATION OF DANIEL POWELL

I, Daniel Powell, being of lawful age, declare as follows:

1.      My name is Daniel Powell.  I am over the age of 18 and have personal knowledge of the facts stated herein.  The facts stated herein are true and correct.

2.      I am the Chief Executive Officer for Spark Biomedical, Inc. ("Spark Biomedical"). As part of my regular job duties, I have access to Spark Biomedical's records of agreements with contractors.

3.      I am familiar with Huascar Rijssenbeek and had direct communications with him during the time period that certain services were provided to Spark Biomedical pursuant to the Spark Biomedical Consulting Agreement.  A true and correct copy of that agreement is attached as Exhibit A-1.

4.      I also have access to the Spark Biomedical email accounts, including accounts that received emails from Mr. Rijssenbeek.  Attached as Exhibit A-2 is a true and correct copy of an email and its attachment that was received from Mr. Rijssenbeek on June 6, 2025.

5.      Exhibits A-1 and A-2 have been redacted in an effort to remove email addresses and certain other personal information.

6.      I am also a custodian of records for Spark Biomedical.  Exhibits A-1 and A-2 are part of the business records of Spark Biomedical that are kept by Spark Biomedical in the regular course of business.  It is a regular business practice of Spark Biomedical to keep such records. These records were made or received at or near the time of the events recorded therein by a person with knowledge of the events reflected therein and reside in Spark Biomedical's database records and/or email system.

I declare under the penalty of perjury under the laws of the State of Texas and United States of America that the foregoing is true and correct.

EXECUTED on February 13, 2026 in Dallas County, Texas.

Daniel Powell,
Chief Executive Officer
for Spark Biomedical, Inc.

# Exhibit A-1

## SPARK BIOMEDICAL CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (this "Agreement") is entered into as of the 7th day of June, 2025 (the "Effective Date") between Global X MGT LLC Huascar Rijssenbeek an individual resident of Florida, with an address at ████████████████ (the "Consultant") and Spark Biomedical, Inc. a Texas corporation with an address at ████████████████████████████████████ ("Company").

### BACKGROUND:

WHEREAS, Company desires to engage the services of the Consultant in a consulting capacity to assist with Marketing. (the "Field of Interest") and Consultant is qualified to, and desires to provide the services to the Company upon the terms and conditions described below.

NOW, THEREFORE, in exchange for the premises, promises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereby agree as follows:

### AGREEMENT:

1.    APPOINTMENT

Subject to the terms and conditions of this Agreement, Company hereby engages the Consultant, and Consultant hereby agrees to perform the Services described in Section 2 of this Agreement for Company.

2.    CONSULTANT OBLIGATIONS.

During the Term, Consultant shall provide expert advice and consult with Company management in the following services areas (the "Services") for Company:

- Own and manage paid media campaigns across Meta, Google, TikTok, and Pinterest.
- Build and manage testing frameworks for creative, copy, audience, and landing pages.
- Analyze campaign performance, identify optimization opportunities, and scale top-performing efforts.
- Partner with the in-house Designer and Creative Agency to produce high-performing creative assets.
- Develop and optimize automated flows and one-time campaigns in Klaviyo (abandoned cart, post-purchase, win back, education, etc.).
- Build audience segments and implement A/B tests to improve open rates, CTR, and conversions.
- Collaborate with the Social, Creative, and E-commerce teams to ensure message consistency across all touchpoints.
- Track and report on KPIs including CAC (customer acquisition cost), ROAS (return on ad spend), LTV (lifetime value), retention, and funnel conversion.
- Translate data into actionable insights and strategic recommendations.

- Partner with the E-commerce Ops team to test landing page performance and conversion rate optimization (CRO) opportunities.
- Work closely with the VP of Growth to repurpose influencer and affiliate content into paid channels.
- Align with the Social Media Manager to create full-funnel campaigns across paid + organic and leverage UGC Creator content.
- Collaborate with the E-commerce Ops Director to ensure seamless customer journeys from ad to checkout.

3.    COMPANY OBLIGATIONS.

During the Term (as defined below), Company shall:

a.  Furnish Consultant with such information as Company deems reasonably necessary to enable the Consultant to perform the Services; and

b.  Compensate Consultant in accordance with Section 5.

4.    TERM AND EXPIRATION.

a.  This Agreement shall become effective as of the Effective Date and remain in effect for a term of one year, and shall thereafter continue on a month to month basis unless sooner terminated as provided below (the "Term").

b.  Termination of this Agreement or the expiration of the Term of this Agreement shall not affect Consultant's right to compensation for Services provided or expenses properly incurred by the Consultant prior to the termination date.

c.  Either party may terminate this Agreement at any time without cause or penalty upon fifteen (15) days prior written notice to the other party.

d.  Either party may terminate this Agreement immediately for cause upon of a material breach by the other party.

5.    COMPENSATION AND EXPENSE REIMBURSMENT

The company will pay the Consultant $69.23/hour based on an approved invoice that will be provided to the company on the 1st and 16th of every month for the previous months hours. Payment will be made by the Company to the Consultant no later than 15 days after receipt of the invoice from the consultant.

The Company shall reimburse the Consultant for travel or other expenses reasonably incurred in performance of the Services hereunder, upon submission of supporting receipts and undertaken in accordance with the Company's current travel policies. All travel must be pre-approved by the Company.

All travel should be arranged by Company, unless otherwise agreed. Company will cover the

cost of Consultant's hotel room, excluding incidentals, a 21-day advance purchase roundtrip coach airfare, airport transfers or parking and reasonable meals. If Consultant wishes to extend his travel beyond what is required by the Company, unless approved by the Company, such expenditures will be the responsibility of Consultant.

Unless otherwise agreed, travel time not spent on working on Company matter is not billable.

6.    PROPRIETARY INFORMATION AND PATENTS

Consultant will be given access to proprietary and confidential information of Company including, but not limited to, information relating to existing or contemplated products, services, processes, techniques, know-how, data, analysis, structure, work plans, patents, and notes, summaries or other material derived from the Proprietary Information (collectively referred to as "Proprietary Information").

   a.   All Proprietary Information shall be the sole property of Company, and Company shall be the sole owner of all patents and other rights in connection therewith.

   b.   All documents, data, records, apparatus, equipment and other physical property, whether or not pertaining to Proprietary Information, furnished to the Consultant by Company or produced, prepared or otherwise developed by the Consultant or others in connection with the Consultant's engagement and provision of Services hereunder shall be and remain the sole property of Company and shall be returned promptly to Company as and when requested by Company. Upon the earlier of (i) the request of Company, or (ii) upon termination of the Term, the Consultant shall immediately return and deliver all such property and Proprietary Information to Company. Consultant will not retain any property or Proprietary Information or any copies.

   c.   Consultant will promptly and fully disclose to the Company any idea, concept, invention, improvement, discovery, process, formula, technique or method or other intellectual property relating to, or useful in, the Field of Interest or otherwise arising out of the receipt or use of Proprietary Information (whether or not patentable or copyrightable) conceived, developed, or first reduced to practice by Consultant or anyone working on his behalf, either alone or jointly with others, while performing Services pursuant to this Agreement (the "Consultant Discoveries"). Any work currently or previously performed or created by Consultant for Company ("Work") since January 1, 2019 is being created at the request of Company and shall be deemed a "work made for hire" under applicable laws (including without limitation U.S. copyright law).

Consultant agrees to, and hereby does, assign to the Company all of his right, title, and interest in and to any such Consultant Discoveries. Consultant agrees to take such actions and execute such documents as reasonably required by Company to secure and enforce Company's rights in Consultant Discoveries, including the documents required for Company to apply for, obtain, and enforce patents or copyrights in any and all countries on such Consultant Discoveries.

7.    CONFIDENTIALITY

a.  To the extent that, in connection with this engagement, Consultant comes into contact or possession of any Proprietary Information, Consultant will not directly or indirectly make use of (except as may be necessary in the ordinary course of performing duties as a Consultant of Company) or disclose such information to any third party during the Term of this Agreement or at any time thereafter without Company's express written consent. For the purposes of this Section 7, Proprietary Information excludes information that has been publicly disclosed by the Company, or is previously known to the Consultant. If Consultant receives a subpoena or other legal process requiring any disclosure, Consultant will, prior to responding to any such legal process, if legally permissible, immediately notify Company so that Company may raise any defenses to disclosure, as appropriate, and provide reasonable assistance to Company during this process, at Company's expense. Consultant will not disclose to the Company, use in its business, or cause it to use, any information or material, which is confidential or proprietary to others.

b.  Consultant acknowledges that in connection with providing the Services, Consultant may receive from, create on behalf of the Company or its customers (or prospective customers or users of its products), or otherwise come into contact with, an individual's "protected health information" ("PHI") as that term is defined in the privacy regulations issued under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Accordingly, Consultant agrees: (a) to hold in confidence the identity of any individual patient or prospective user of a Company product and not to use or disclose PHI other than as may be necessary to perform the Services or as required by law; (b) to use appropriate safeguards to prevent use or disclosure of PHI other than as provided in this Agreement; (c) to promptly report to the Company any improper use or disclosure of PHI, and to mitigate, to the extent practicable, any harmful effect known to Consultant of an improper use or disclosure of PHI; and (d) upon completion of each assignment and upon termination of this Agreement, Consultant will destroy or return to the Company all PHI in its possession and shall not retain any copies of the same. In the event Consultant receives a subpoena, request or other legal process relating to PHI that may have been received or created by Consultant in performing the Services, Consultant shall, if legally permissible, immediately provide the Company with a copy of such subpoena, notice or request, afford the Company an opportunity to exercise any rights it may have under law, and provide reasonable assistance to Company during this process at the expense of Company.

8.    DISPUTE RESOLUTION

Except if a party seeks injunctive or other equitable relief, in which case in connection therewith either party may file suit in a court of competent jurisdiction as contemplated in Section 13(c), if a dispute arises between the parties relating to this Agreement, representatives of the parties with decision-making authority shall meet to attempt in good faith to negotiate a resolution of the dispute prior to pursuing other available remedies. If within thirty (30) days after such meeting the parties have not succeeded in negotiating a resolution of the dispute, such dispute shall be submitted to final and binding arbitration under the then current Commercial Arbitration Rules of the American Arbitration Association ("AAA"), by one (1) arbitrator in Texas. Such arbitrator shall be selected by the mutual agreement of the parties or, failing such agreement,

shall be selected according to the AAA rules. The arbitrator will be instructed to prepare and deliver a written, reasoned opinion stating his decision within thirty (30) days of the completion of the arbitration.

Such arbitration shall be concluded within three (3) months following the filing of the initial request for arbitration. The parties shall bear the costs of arbitration equally and shall bear their own expenses, including professional fees. The decision of the arbitrator shall be final and non-appealable and may be enforced in any court of competent jurisdiction.  Nothing in this Section shall be construed as impacting either party's ability to exercise its rights under <u>Section 4(c)</u> and <u>Section 4(d)</u> above.

9.      INDEPENDENT CONTRACTOR

The relationship of the parties is that of independent contractors and nothing in this Agreement or the course of dealing of the parties shall be deemed to imply or create any other relationship, including employer and employee, joint ventures, partners, or principal and agent. Consultant shall have no authority to bind the Company or its affiliates through any act or omission of Consultant. The manner in which Consultant's Services are rendered shall be within Consultant's sole control and discretion. Consultant is not authorized to speak for, represent, or obligate Company in any manner without the prior express written authorization from an officer of Company. Consultant shall be responsible for all taxes arising from compensation and other amounts paid under this Agreement, and shall be responsible for all payroll taxes and fringe benefits. The Company shall not withhold or pay any federal, state, or local income tax, or payroll tax for or on behalf of Consultant, and Consultant shall indemnify Company against any taxing authority that attempts to collect such Consultant's taxes from the Company. Consultant shall not be eligible for, or participate in, any employee pension, health, welfare, or other fringe benefit plan, of Company. Company shall be under no obligation to obtain workers' compensation or any other insurance coverage for Consultant.

10.     FINANCIAL DISCLOSURE

FDA regulations require disclosure of any significant financial interests which Consultant holds in a sponsor. Consultant shall disclose to any sponsor any financial interest he/she may have in sponsor, as defined by the FDA. Sponsor may provide this information to the FDA in satisfaction of its reporting requirements. This obligation will be in effect during the period of this Agreement. If the Consultant provides services for a Company clinical trial, the obligation will be in effect for (1) year after the closure of the trial. Consultant shall update the financial information if any changes occur in this period.

In accordance with the Physician Payment Sunshine Act—Section 6002 of the Patient Protection and Affordable Care Act (PPACA), Consultant acknowledges that Company may be required to report certain payments made to or on behalf of Consultant.

11.     COMPLIANCE WITH LAWS AND REGULATIONS

Consultant shall perform his obligations under this Agreement in accordance with applicable standards of professional and business ethics. Consultant represents and warrants that the fees and payments hereunder are solely in exchange for the Services and for no other purpose

whatsoever, and that the Services, fees and payments hereunder are without regard to the volume or value of any referrals or business otherwise generated by the parties. In addition, Consultant represents and warrants that:

   a.  Consultant will comply with all applicable laws, regulations, rules and regulatory orders applicable in the country, provincial, state and local jurisdictions where the Services are performed, including anticorruption laws;

   b.  Consultant will not solicit or receive any remuneration in return for referring any individual for, or the purchasing, ordering or recommending of, the furnishing of any item or service for which payment may be made in whole or in part by a U.S. federal health program;

   c.  Consultant will not in consideration of the fees and payments hereunder be induced in any act or decision in Contractor's official capacity, or do or omit to do any act in violation of Consultant's lawful duty, or secure any improper advantage, or use Consultant's influence with a foreign government or instrumentality thereof in order to obtain or retain, or direct business to, Company;

   d.  Consultant will not make, offer, promise or authorize any payment or transfer of anything of value directly or indirectly to any government official or employee (including employees of any government-controlled corporation or public international organization) or any political party or candidate for political office, for the purpose of influencing any act or decision of such official or the government to obtain or retain business, or to direct business to any person; provided, however, that payments prohibited hereunder do not include the payment of reasonable and bona fide expenditures, such as travel and lodging expenses, which are directly related to the promotion, demonstration or explanation of products or services, or the execution of performance of a contract with the government or agency thereof so long as such payments are permissible under local law and authorized by the recipient's employer; and

   e.  Consultant shall provide all information and documents to Company as may be requested by Company to demonstrate compliance with the provisions of this section.

12.  INSTITUTIONAL APPROVAL; NO CONFLICT

   a.  Consultant will disclose the Services and fees and expenses to be paid hereunder to Consultant's employing institution, if required by that institution. Consultant represents and warrants that this Agreement, the Services, and the fees and expenses to be paid and paid hereunder are permitted under the ethics, conflict of interest, and outside consulting and research policies of Consultant's employer, and shall provide Company with evidence of Consultant's compliance with this Section upon request.

   b.  Consultant's execution and performance of this Agreement does not and will not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which Consultant or any of its employees or agents is a party or by which Consultant or any of its employees or agents are bound. Consultant is not a

party to or bound by any conflicting consulting agreement, employment agreement, non-compete agreement or confidentiality agreement with any other person or entity.

13.    GENERAL PROVISIONS

a.    <u>Merger Clause</u>. This Agreement contains the complete and entire understanding and agreement between the parties and supersedes any previous communications, representations, or agreements, verbal or written, related to the subject matter of this Agreement. This Agreement may only be amended by mutual agreement documented in writing.

b.    <u>Severability; Survival</u>. In the event any paragraph or provision of this Agreement is held to be void or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement shall nevertheless be binding upon the parties with the same force and effect as though the void and unenforceable parts had been severed or deleted. <u>Section 6</u> through <u>Section 13</u> shall survive the termination or expiration of this Agreement.

c.    <u>Governing Law</u>. Company and the Consultant hereto expressly agree that this Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without regarding to its principles of conflicts of law, or any other substantive law that would result in the application of any law other than the State of Texas. In the event that either party commences a legal action pursuant to this Agreement, the parties hereto agree to the exclusive jurisdiction of the federal and state courts located in Houston, Harris County, State of Texas. Neither party will object to the law, venue or jurisdiction of the designated courts, whether by administrative convenience, inconvenient forum, forum non-conveniens or similar motions.

d.    <u>Binding on Others</u>. This Agreement shall be binding upon and shall inure to the benefit of Company present and past agents, servants, officers, directors, partners, related companies, and the predecessors, employees, franchisees, trustees, representatives, shareholders, successors and assigns.

e.    <u>Captions</u>. The captions appearing in this Agreement are inserted for convenience and reference only, and in no way define, limit or describe the scope or intent of this Agreement or any of the provisions hereof.

f.    <u>Counterparts</u>.    This Agreement may be executed simultaneously in two or more counterparts, including by email in portable document format, each of which shall be deemed an original, but all of which shall constitute one and the same instrument, notwithstanding that both parties may not be signatory to the same counterpart.

g.    <u>No Waiver</u>. The waiver of any term or provision of this Agreement shall not be construed as a waiver of any other term or provision.

h.    <u>Assignment</u>. Except as otherwise permitted below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other party.

Company may, without written consent of Consultant, assign, transfer or delegate its rights or obligations hereunder to (a) any affiliate or related entity, or (b) any entity which acquires all or a substantial part of the assets or business of the Company.

i.   Notices. Any notice required to be given under this Agreement shall be effective only if given in writing and sent by overnight delivery service with proof of receipt, or by certified mail return receipt requested, or, alternatively by electronic mail. Notices shall be sent to the addresses provided on the first page of this Agreement (which may be changed by giving notice in conformity with this provision).

j.   Construction. Each party acknowledges that it has had the opportunity to be represented by counsel of its choice with respect to this Agreement. In view of the foregoing and notwithstanding any otherwise applicable principles of construction or interpretation, this Agreement shall be deemed to have been drafted jointly by the parties and, in the event of any ambiguity, shall not be construed or interpreted against the drafting party.

14.   INDEMNIFICATION

Company agrees to indemnify, defend and hold harmless Consultant from and against any and all third-party actions, claims, lawsuits, demands, prosecutions, proceedings or investigations that may be brought or instituted (each a "Claim") and all resulting damages, liabilities, costs and expenses (including reasonable attorneys' fees and expert witnesses' fees and costs) (collectively, the "Losses") arising out of Consultant's performance of Services pursuant to this Agreement, except that any Claim is excluded to the extent directly caused by any of the following by Consultant: (a) material breach of this Agreement; (b) negligence, recklessness, or willful misconduct; or (c) material failure to comply with applicable laws or regulations. In the event any Claim is made, Consultant shall promptly notify Company in writing (provided that a failure to promptly notify will reduce the indemnity rights of Consultant only to the extent that such delay or failure to promptly notify actually prejudiced Company's defense of the Claim, shall cooperate fully with Company in the defense of such Claim (provided that such cooperation is at Company's expense)), and shall permit Company to defend and settle any Claim in its sole discretion (provided that Company shall act reasonably with respect to the defense or settlement of any Claim and will not reach any settlement which requires an admission of fault or imposes liability on Consultant without Consultant's consent).

Consultant shall indemnify, defend and hold harmless Company from and against all Claims and all resulting Losses directly caused by Consultant's: (i) material breach of this Agreement; (ii) negligence, recklessness, or willful misconduct; or (iii) material failure to comply with applicable laws or regulations.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK. SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

Spark Biomedical, Inc.

CONSULTANT

_____
Daniel Powell (Jun 9, 2025 09:21 CDT)
Name: Daniel P. Powell
Title: President

_____
Huascar Rijssenbeek (Jun 9, 2025 10:20 EDT)
Name: Huascar Rijssenbeek

# 25_06_6pm v2 Huascar Rijssenbeek Consulting Agreement

Final Audit Report                                                         2025-06-09

| | |
|---|---|
| Created: | 2025-06-09 |
| By: | Kelly Jackson (███████████████████) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAbVP_BOJDBk7EXClz-hmK10oogVeHze0q |

## "25_06_6pm v2 Huascar Rijssenbeek Consulting Agreement" History

🔖 Document created by Kelly Jackson (████████████████████████)
    2025-06-09 - 1:05:54 PM GMT

📧 Document emailed to ████████████████for signature
    2025-06-09 - 1:06:34 PM GMT

🔖 Email viewed by ████████████████
    2025-06-09 - 2:17:28 PM GMT

✍️ Signer ████████████████entered name at signing as Huascar Rijssenbeek
    2025-06-09 - 2:20:55 PM GMT

✍️ Document e-signed by Huascar Rijssenbeek (████████████████)
    Signature Date: 2025-06-09 - 2:20:57 PM GMT - Time Source: server

📧 Document emailed to Daniel Powell (████████████████████████) for signature
    2025-06-09 - 2:20:58 PM GMT

🔖 Email viewed by Daniel Powell (████████████████████████)
    2025-06-09 - 2:21:15 PM GMT

✍️ Document e-signed by Daniel Powell (████████████████████████)
    Signature Date: 2025-06-09 - 2:21:29 PM GMT - Time Source: server

✅ Agreement completed.
    2025-06-09 - 2:21:29 PM GMT

**Adobe Acrobat Sign**

# Exhibit A-2

## Randy Bruchmiller

| | |
|---|---|
| **From:** | Huascar ██████████████ |
| **Sent:** | Friday, June 6, 2025 9:51 AM |
| **To:** | Karl Pawlik |
| **Cc:** | Jackie Powell; Preeti Dalal; Kelly Jackson |
| **Subject:** | Re: Tax Information |
| **Attachments:** | Form w9.pdf |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Hi,

Please see attached.

Because we are doing 1099 i added my business EIN and not my personal one.

Thanks,

Huascar

On Friday, June 6th, 2025 at 10:11 AM, Karl Pawlik <████████████████████████> wrote:

> Hi Oscar,
>
> Please complete the attached, sign and send back to me and Preeti.
>
> We need this to complete your contract and for payment.
>
> Karl



**Karl Pawlik**

CFO

Spark Biomedical, Inc.

---

650-906-0339

www.sparkbiomedical.com

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
## Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send it to the IRS.**

*Print or type. See Specific Instructions on page 3.*

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**GLOBAL X MGT LLC**

**2** Business name/disregarded entity name, if different from above

**GLOBAL X MGTLLC**

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

- [x] Individual/sole proprietor or single-member LLC
- [ ] C Corporation
- [ ] S Corporation
- [ ] Partnership
- [ ] Trust/estate

- [ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶

  **Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

- [ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

███████████

Requester's name and address (optional)

**7** List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |

**or**

**Employer identification number**

████████████

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**    Signature of U.S. person ▶    Date ▶

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

- Form 1099-INT (interest earned or paid)

- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

  Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

  *If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X    Form **W-9** (Rev. 10-2018)

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting,* later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code,* later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships,* earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code,* later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note: ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n) . . . | THEN check the box for . . . |
|---|---|
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note:** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

# Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note:** See *What Name and Number To Give the Requester,* later, for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.SSA.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/Businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. Go to *www.irs.gov/Forms* to view, download, or print Form W-7 and/or SS-4.  Or, you can go to *www.irs.gov/OrderForms* to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

# Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code,* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 2. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |

| For this type of account: | Give name and EIN of: |
|---|---|
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships*, earlier.

**\*Note:** The grantor also must provide a Form W-9 to trustee of trust.

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov.* You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at *spam@uce.gov* or report them at *www.ftc.gov/complaint.* You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.IdentityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.