IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **HUASCAR RIJSSENBECK,** | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § | CIVIL ACTION No. 4:25-cv-5786 |
| **SPARK BIOMEDICAL, INC.,** | | |
| Defendant. | | |

**DEFENDANT/COUNTER-PLAINTIFF SPARK BIOMEDICAL, INC.'S ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT, SUBJECT TO ITS <u>MOTION TO COMPEL ARBITRATION AND TO STAY THE CASE</u>**

COMES NOW, Defendant, Spark Biomedical, Inc. ("Spark Biomedical" or "Defendant"), and files this Answer, Counterclaim and Third-Party Complaint, Subject to Its Motion to Compel Arbitration and to Stay the Case and respectfully states as follows:

**ANSWER**

1. Spark Biomedical denies the allegations in paragraph 1 of Plaintiff's First Amended Complaint.

2. Spark Biomedical denies the allegations in paragraph 2 of Plaintiff's First Amended Complaint.

3. Spark Biomedical admits the allegation that Plaintiff Huascar Rijssenbeck ("Plaintiff") is a Florida resident to the best of Spark Biomedical's knowledge in paragraph 3 of Plaintiff's First Amended Complaint.

4. Spark Biomedical admits the allegations in paragraph 4 of Plaintiff's First Amended Complaint.

1

5. Spark Biomedical admits the allegations in paragraph 5 of Plaintiff's First Amended Complaint.

6. Spark Biomedical admits that the address listed in paragraph 6 of Plaintiff's First Amended Complaint is referenced on certain Texas Secretary of State filings, but the allegation is otherwise denied.

7. Spark Biomedical denies the allegations in paragraph 7 of Plaintiff's First Amended Complaint.

8. Spark Biomedical admits that the Court has federal question jurisdiction due to Plaintiff alleging a violation of a federal statute but otherwise denies the allegations in paragraph 8 of Plaintiff's First Amended Complaint and contends that the matter should be resolved in arbitration, as required by the terms of the agreement between the parties.

9. Spark Biomedical admits that venue is proper in Houston as alleged in paragraph 9 of Plaintiff's First Amended Complaint but otherwise denies the remaining allegations and contends that the matter should be resolved in arbitration, as required by the terms of the agreement between the parties.

10. Spark Biomedical denies the allegations in paragraph 10 of Plaintiff's First Amended Complaint.

11. Spark Biomedical denies the allegations in paragraph 11 of Plaintiff's First Amended Complaint.

12. The allegations in paragraph 12 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 12 of Plaintiff's First Amended Complaint.

13. The allegations in paragraph 13 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 13 of Plaintiff's First Amended Complaint.

14. The allegations in paragraph 14 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 14 of Plaintiff's First Amended Complaint.

15. The allegations in paragraph 15 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 15 of Plaintiff's First Amended Complaint.

16. The allegations in paragraph 16 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical admits that Plaintiff was issued a laptop that he failed to return but otherwise denies the allegations in paragraph 16 of Plaintiff's First Amended Complaint.

17. Spark Biomedical admits the allegations in paragraph 17 of Plaintiff's First Amended Complaint.

18. Spark Biomedical denies the allegations in paragraph 18 of Plaintiff's First Amended Complaint.

19. Spark Biomedical denies the allegations in paragraph 19 of Plaintiff's First Amended Complaint.

20. Spark Biomedical admits that Plaintiff was to be paid at an hourly rate, but denies the remaining allegations in paragraph 20 of Plaintiff's First Amended Complaint.

21. Spark Biomedical admits the allegations in paragraph 21 of Plaintiff's First Amended Complaint.

22. Spark Biomedical admits that it treated Plaintiff as an independent contractor and issued him a laptop that he failed to return but denies the remaining allegations in paragraph 22 of Plaintiff's First Amended Complaint.

23. Spark Biomedical admits that it treated Plaintiff as an independent contractor but denies the remaining allegations in paragraph 23 of Plaintiff's First Amended Complaint.

24. Spark Biomedical admits that it treated Plaintiff as an independent contractor but denies the remaining allegations in paragraph 24 of Plaintiff's First Amended Complaint.

25. Spark Biomedical admits that it treated Plaintiff as an independent contractor but denies the remaining allegations in paragraph 25 of Plaintiff's First Amended Complaint.

26. Spark Biomedical admits that it treated Plaintiff as an independent contractor but denies the remaining allegations in paragraph 26 of Plaintiff's First Amended Complaint.

27. Spark Biomedical admits that it treated Plaintiff as an independent contractor but denies the remaining allegations in paragraph 27 of Plaintiff's First Amended Complaint.

28. Spark Biomedical admits that it treated Plaintiff as an independent contractor but denies the remaining allegations in paragraph 28 of Plaintiff's First Amended Complaint.

29. Spark Biomedical admits that it paid all invoices submitted by Plaintiff but denies the remaining allegations in Paragraph 29 of Plaintiff's First Amended Complaint.

30. Spark Biomedical denies the allegations in paragraph 30 of Plaintiff's First Amended Complaint.

31. Spark Biomedical denies the allegations in paragraph 31 of Plaintiff's First Amended Complaint.

32. Spark Biomedical denies the allegations in paragraph 32 of Plaintiff's First Amended Complaint.

33. Spark Biomedical denies the allegations in paragraph 33 of Plaintiff's First Amended Complaint.

34. Spark Biomedical denies the allegations in paragraph 34 of Plaintiff's First Amended Complaint.

35. Spark Biomedical denies the allegations in paragraph 35 of Plaintiff's First Amended Complaint.

36. Spark Biomedical denies that Plaintiff worked over 40 hours per week and otherwise denies the allegations in paragraph 36 of Plaintiff's First Amended Complaint.

37. Spark Biomedical denies that Plaintiff was an employee and otherwise denies the allegations in paragraph 36 of Plaintiff's First Amended Complaint.

38. Spark Biomedical denies the allegations in paragraph 38 of Plaintiff's First Amended Complaint.

39. Spark Biomedical denies the allegations in paragraph 39 of Plaintiff's First Amended Complaint.

40. The allegations in paragraph 40 do not require and admission or denial. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 40 of Plaintiff's First Amended Complaint.

41. The allegations in paragraph 41 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 41 of Plaintiff's First Amended Complaint.

42. The allegations in paragraph 42 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 42 of Plaintiff's First Amended Complaint.

43. The allegations in paragraph 43 are legal conclusions for which no response is required. To the extent a response is required, Spark Biomedical denies the allegations in paragraph 43 of Plaintiff's First Amended Complaint.

44. In response to the allegations in Plaintiff's "Prayer for Relief" paragraph, Spark Biomedical denies all allegations therein and denies that Plaintiff is entitled to any damages or other relief requested in subsections (a.) through (e.).

## AFFIRMATIVE DEFENSES AND SPECIFIC DENIALS

45. Spark Medical asserts the following affirmative defenses and specific denials, without admitting liability and with each pled in the alternative.

46. Plaintiff's First Amended Complaint fails to state a claim against Spark Biomedical for which relief can be granted.

47. Plaintiff was properly classified as an independent contractor and was compensated for all services rendered.

48. All or part of Plaintiff's claims are barred by accord and satisfaction. Alternatively, Spark Biomedical is entitled to offset amounts already paid to Plaintiff related to his claims in this lawsuit.

49. Plaintiff's claims are barred by settlement and/or payment, and release given that Spark Biomedical paid the invoice that represented that payment for same would "fully close and settle my engagement" but, despite that payment, Plaintiff then filed this lawsuit relating to the same engagement that was fully settled.

50. Spark Biomedical invokes the defenses, protections, and limitations of the FLSA.

51. Spark Biomedical pleads that any acts or omissions which may be found to be in violation of the rights afforded by the FLSA or other applicable law occurred in good faith, were based on reasonable factors, and/or were in conformity with relevant laws and regulations.

52. All or part of Plaintiff's claims are barred because he released any and all relevant claims against Spark Biomedical in exchange for payment of any amount allegedly owed.

53. All or part of Plaintiff's claims are barred by the equitable doctrines of estoppel, laches, acquiescence, ratification, and waiver.

54. All or part of Plaintiff's claims are barred because he has been paid all invoices submitted to Spark Biomedical for the services he performed under the applicable consulting agreement.

55.  Plaintiff is not entitled to liquidated damages because Spark Biomedical acted reasonably, in good faith, and decisions regarding payment to Defendant were based upon reasonable grounds.

56. The actions complained of in the Complaint were supported by legitimate business reasons and Spark Biomedical had reasonable grounds for any decisions made and for believing that it was in compliance with the FLSA.

57. Defendant did not willfully or intentionally fail to pay any payment owed to Plaintiff.

58. All or part of Plaintiff's claims are barred because the amount of any alleged unpaid overtime allegedly due is *de minimus*.

59. All or part of Plaintiff's claims are barred to the extent Plaintiff seeks damages based on time that is not compensable time, *i.e.* "hours worked" under the FLSA. Alternatively, Spark Biomedical is entitled to offset money or other consideration paid or provided to Plaintiff for periods in which he was not engaged in compensable work.

60. All or part of Plaintiff's claims are barred to the extent he seeks payment for activities that are preliminary or postliminary to his principal work activities and that are not integral or indispensable to those activities.

61. All or part of Plaintiff's claims are barred to the extent he seeks payment for activities considered non-compensable under the Portal-to-Portal Act.

62. All or part of Plaintiff's claims are estopped by his recordation and/or submission of his own time invoices that he calculated and for which he was compensated.

63. The alleged time for which Plaintiff seeks compensation is irregular as well as practically and administratively difficult to record.

64. All or part of Plaintiff's claims are barred because Plaintiff failed to mitigate his damages.

65. Plaintiff may not recover liquidated damages or prejudgment interest because it would amount to a "double recovery."

66. Defendant reserves the right to plead, assert, and rely on all proper affirmative or other defenses lawfully available, including those which may be disclosed or discovered through further assertions by Plaintiff or otherwise through discovery.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

### PARTIES, JURISDICTION AND VENUE

67. Counter-Plaintiff/Defendant Spark Biomedical, Inc. is a Delaware corporation with its principal place of business in Texas. Spark Biomedical has entered an appearance in this matter.

68. Plaintiff/Counter-Defendant Huascar Rijssenbeek is an individual residing at 8820 SW 182nd Ter, Miami, Florida 33157. Mr. Rijssenbeek has entered an appearance in this matter.

69. Third-Party Defendant Global X MGT LLC is to be Mr. Rijssenbeek's company, according to him, with its address at 8820 SW 182nd Ter, Miami, Florida 33157. This is the same address as Mr. Rijssenbeek's home address. Global X MGT LLC may be served with process at that address or by serving the Texas Secretary of State because Global X MGT LLC has failed to register to do business in Texas.

70. Spark Biomedical is a leader in providing drug-free treatment options through wearable neurostimulation technology in the areas of mental health, women's health, hemostasis and pediatrics.

71. As outlined in Spark Biomedical's Motion to Compel Arbitration, this lawsuit should stayed and be sent to arbitration. In the meantime, Spark Biomedical is filing its counterclaim and third-party complaint to avoid any arguments of waiver to pursue same should the motion to compel arbitration not be granted.

72. Venue is proper in Harris County, Texas pursuant to the agreement in Section 13 of the Spark Biomedical Consulting Agreement ("Consulting Agreement"). Venue is also proper pursuant to 28 U.S.C. 1391(b) as a substantial part of the events and omissions giving rise to Spark Biomedical's claims occurred in this judicial district.

BACKGROUND

73. Spark Biomedical provides drug-free treatment options through wearable neurostimulation technology in the areas of mental health, women's health, hemostasis and pediatrics.

74. Spark Biomedical originally tried to bring Mr. Rijssenbeck on as an employee. However, he refused and requested that Spark Biomedical instead contract with his company as an independent contractor to perform certain services.

75. On or about June 9, 2025, Spark Biomedical and Mr. Rijssenbeck entered into the Consulting Agreement whereby Mr.Rijssenbeck or those that may assist him would be paid for Services, as that term is defined in Section 2 of the Consulting Agreement (the "Services").

76. Mr. Rijssenbeck requested that all payments for the services be paid to what he claimed was his company, Third-Party Defendant Global X MGT LLC. This entity was included next to Mr. Rijssenbeck's name in the Consulting Agreement that was signed by Mr. Rijssenbeck.

77. As Services were allegedly performed, Global X MGT LLC issued invoices to Spark Biomedical from June 16, 2025 to October 10, 2025.

78. On or about October 10, 2025, Spark Biomedical terminated the relationship with Mr. Rijssenbeck.

79. On that same day, Global X MGT LLC issued another invoice that was the final invoice for Services that had allegedly been performed through the date of termination.

80. In Section 11 of the Consulting Agreement, Mr. Rijssenbeck represented and warranted that all fees and payments under the Consulting Agreement would be "solely in exchange for Services and no other purpose."

81. Despite that, Global X MGT LLC issued yet another invoice to Spark Biomedical on October 17, 2025 for $8,525.67 (the "Non-Services Invoice"). This invoice was not for services performed but instead states that it "represents contractual notice-period compensation due under the Consulting Agreement" and is "compensation in lieu of the fifteen (15) days' written notice required" under the Consulting Agreement.

82. The charge in the Non-Services Invoice was not authorized by any provision of the Consulting Agreement. Specifically, there is no requirement in the Consulting Agreement to pay Mr. Rijssenbeck or Global X MGT LLC for any services performed in the purported 15-day notice

period. To the contrary, Section 11 of the Consulting Agreement specifically mandates that all fees and payments under the Consulting Agreement would be "solely in exchange for Services and no other purpose."

83. Therefore, the Non-Services Invoice which did not reflect a charge for services should never have been issued by Global X MGT LLC and was nothing more than an improper method to siphon additional funds from Spark Biomedical.

84. In furtherance of the scheme of Mr. Rijssenbeck and Global X MGT LLC to get these additional funds from Spark Biomedical, Mr. Rijssenbeck threaten the company by indicating that he would not return Spark Biomedical's laptop that was issued to him until the Non-Services Invoice was paid.

85. Spark Biomedical paid Third-Party Defendant Global X MGT LLC for all invoices received from the entity, including the improper Non-Services Invoice.

86. Despite that payment, Mr. Rijssenbeck never returned Spark Biomedical's laptop and also filed this lawsuit after representing in the Non-Service Invoice that payment for same would "fully close and settle [Mr. Rijssenback's] engagement."

## Causes of Action

**Count 1: Breach of Contract**

87. All prior paragraphs are incorporated herein as if fully set forth.

88. First, Spark Biomedical and Mr. Rijssenbeck are parties to a contract – the Consulting Agreement.

89. Mr. Rijssenbeck, with the assistance of and through Global X MGT LLC, breached the Consulting Agreement by issuing the Non-Services Invoice to Spark Biomedical that is

prohibited by the terms of the Consulting Agreement because it was not for Services performed.

90. Spark Biomedical was damaged in the amount of $8,525.67 when it paid the invoice after threats from Mr. Rijssenbeck.

91. Second, despite stating in the Non-Services Invoice that "[o]nce processed, this will fully close and settle my engagement" and despite Spark Medical paying the Non-Services Invoice, Mr. Rijssenbeck breached that representation by filing this lawsuit.

92. This has caused Spark Biomedical to incur time and attorney's fees defending this lawsuit.

**Count 2: Unjust Enrichment**

93. All prior paragraphs are incorporated herein as if fully set forth.

94. Global X MGT LLC was unjustly enriched by issuing an invoice to Spark Biomedical for the Non-Services Invoice that was prohibited by the terms of the Consulting Agreement because it was not for Services performed.

95. Spark Biomedical was damaged in the amount of $8,525.67 when it paid the invoice after threats from Mr. Rijssenbeck.

96. Under these circumstances, it is unfair for Global X MGT LLC to retain the payment that should not have been paid to it.

**Count 3: Negligent Misrepresentation**

97. All prior paragraphs are incorporated herein as if fully set forth.

98. Mr. Rijssenbeck and Global X MGT LLC negligently represented to individuals at Spark Biomedical that it was owed $8,525.67 in the Non-Services Invoice and subsequent emails to induce Spark Biomedical into paying that amount.

99. Spark Biomedical did not owe that amount to Mr. Rijssenbeck because the Non-Services Invoice did not cover any Services, which is the only basis for Mr. Rijssenbeck or Global X MGT LLC to be paid.

100. Mr. Rijssenbeck failed to exercise reasonable care or competence in communicating the information in the invoice and emails.

101. Individuals at Spark Biomedical justifiably relied on the representations.

102. Spark Biomedical was damaged in the amount of $8,525.67 when it paid the invoice.

103. In addition, Mr. Rijssenbeck also submitted invoices that were not accurate and had inflated amounts owed.

104. Mr. Rijssenbeck failed to exercise reasonable care or competence in communicating the information.

105. Individuals at Spark Biomedical justifiably relied on the representations and paid the invoices.

106. The total damages relating to this conduct is not fully known at this time.

**Count 4:  Fraud**

107. All prior paragraphs are incorporated herein as if fully set forth.

108. First, Mr. Rijssenbeck and Global X MGT LLC (through Ms. Rijssenbeck's representations) intentionally represented to individuals at Spark Biomedical that it was owed $8,525.67 in the Non-Services Invoice and related emails to induce Spark Biomedical into paying that amount.  Mr. Rijssenbeck also refused to return Spark Biomedical's laptop until the payment was made during the three weeks that followed the invoice being issued.  This was all in furtherance of their fraudulent scheme to obtain additional funds despite not being entitled to those funds.

109. Mr. Rijssenbeck and Global X MGT LLC knew that no services had been provided for the Non-Services Invoice but issued it and demanded payment regardless.

110. Spark Biomedical was damaged in the amount of $8,525.67 when it paid the invoice.

111. Second, Mr. Rijssenbeck and Global X MGT LLC submitted invoices to Spark Biomedical for knowingly inflated amounts. Had Mr. Rijssenbeck been carrying out his job duties appropriately, he would have typically had dozens of emails per day. He often had only a few emails per day. Individuals that he should have been communicating with informed Spark Biomedical that Mr. Rijssenbeck was not responsive. The work-product that he (and anyone assisting him) performed was also extremely poor and generally had to be redone by others. The very limited email activity, failure to engage in basic communications that should have occurred, and overall extremely poor work product by him indicates that Mr. Rijssenbeck did very little work during the time that he was an independent contractor with Spark Biomedical. Despite that, Mr. Rijssenbeck and Global X MGT LLC continuously submitted grossly inflated invoices claiming to have worked well over 100 hours during a two-week period.

112. As further evidence that Mr. Rijssenbeck inflated invoices, the Non-Services Invoice that he submitted that he claimed was for the two-week notice period was also inflated. Rather than being for 80 hours, Mr. Rijssenbeck and Global X MGT LLC seeking payment for 123.15 hours when he did not work a single hour in that two-week period. Again, as outlined above, Mr. Rijssenbeck was not entitled to any payment related to the Non-Services Invoice. However, the fact that he even inflated that invoice to 123.15 rather than 80 hours (which would have been consistent with the position he was trying to take) is telling and further confirms his unsavory shenanigans.

113. Spark Biomedical relied on the representations in all of the invoices to its detriment.

114. Spark Biomedical was damaged when it paid the full amount of those invoices.

115. Third, Mr. Rijssenbeck and Global X MGT LLC engaged in a scheme whereby they created the circumstance for which this lawsuit was filed. Specifically, Mr. Rijssenbeck refused to be brought on as an employee of Spark Biomedical and instead insisted that Spark Biomedical enter into an independent contractor relationship with him and treat him as an independent contractor. This allowed Mr. Rijssenbeck to avoid tax withholding that would have amounted to a reduction of approximately $20,000 in taxes and the typical deductions to the overall amount that he took home in pay during the months that he allegedly provided Services to Spark Biomedical. Shortly after Spark Biomedical terminated the relationship with him, Mr. Rijssenbeck quickly claimed that he should have been treated as an employee and demanded that he be paid overtime for the inflated invoices that he had Global X MGT LLC send to Spark Biomedical. The fact that he immediately took this position after being terminated (and after improperly coercing employees of Spark Biomedical to pay the Non-Services Invoice) indicates that Mr. Rijssenbeck engaged in this fraudulent scheme that he laid the groundwork for at the beginning of the relationship with Spark Biomedical a few months earlier to ultimately avoid typical withholding and to then try to claim that he and/or Global X MGT LLC should receive even more money from Spark Biomedical.

116. Spark Biomedical relied on Mr. Rijssenbeck to its detriment when it went along with what turned out to be a trap.

117. As a result of this fraudulent scheme, Spark Biomedical is incurring the time and attorney's fees associated with this lawsuit that was cooked up by Mr. Rijssenbeck.

CIVIL CONSPIRACY

118. All prior paragraphs are incorporated herein as if fully set forth.

119. Mr. Rijssenbeck and Global X MGT LLC engaged in a civil conspiracy to defraud Spark Biomedical and deprive it of funds that should not have been paid to them.

120. They had a meeting of the minds to accomplish the unlawful conduct outlined herein.

121. This meeting of the minds between them is evidenced by their coordinated actions. Mr. Rijssenbeck had control over Global X MGT LLC, which he used as the entity to where funds were paid to carry out the unlawful conduct outlined herein.

122. They engaged in numerous unlawful acts, including seeking payment for an improper invoice, submitting inflating invoices, and engaging in a course of conduct that resulted in Mr. Rijssenbeck creating a course of conduct whereby he would then be able to claim to be owed more money and file a lawsuit seeking same.

123. As outlined herein, Spark Biomedical has been damaged and will continue to be damaged.

AIDING AND ABETTING

124. All prior paragraphs are incorporated herein as if fully set forth.

125. Global X MGT LLC aided and abetted Mr. Rijssenbeck in carrying out his tortious conduct outlined herein.

126. Global X MGT LLC, by virtue of it being run by Mr. Rijssenbeck, had full knowledge of Mr. Rijssenbeck's tortious conduct, intended to and did assist Mr. Rijssenbeck by being the entity to collect funds. This was a substantial factor in Mr. Rijssenbeck being able to carry out his tortious conduct because the funds were paid into Global X MGT LLC using its EIN and avoided typical withholding taxes, all the while setting the trap to later assert a claim

against Spark Biomedical. Global X MGT LLC also assisted Mr. Rijssenbeck by being the entity that accepted the funds from improper and inflated invoices.

## ATTORNEY'S FEES

127. Texas law governs the duties and obligations in the Consulting Agreement.

128. Under Texas law, Spark Biomedical is entitled to recover its reasonable and necessary attorney's fees in their prosecution of this case pursuant to TEX. R. CIV P. 38.001, et. seq. Spark Biomedical retained counsel, who has presented Spark Biomedical's demand to Plaintiff/Counter-Defendant. Plaintiff/Counter-Defendant did not tender the amount owed.

## EXEMPLARY DAMAGES

129. The conduct of Mr. Rijssenbeck and Global X MGT LLC was willful, intentional and with gross indifference to the right of Spark Biomedical, justifying an award of exemplary damages against him.

## **PRAYER**

WHEREFORE, Spark Biomedical, Inc. respectfully requests that:

a. Mr. Rijssenbeck take nothing by way of this lawsuit;
b. Spark Biomedical be awarded $8,525.67 in actual damages for which Mr. Rijssenbeck and Global X MGT LLC shall be jointly and severally liable;
c. Spark Biomedical be awarded exemplary damages for which Mr. Rijssenbeck and Global X MGT LLC shall be jointly and severally liable;
d. Spark Biomedical be awarded its attorney's fees and costs;
e. Spark Biomedical be awarded all further and other relief at law and in equity to which it may show itself to be justly entitled.

Dated:  February 15, 2026    Respectfully Submitted,

**MCFADDEN TRACHTENBERG PLLC**

By: ___/s/ *Randy Bruchmiller*_____
    Randy J. Bruchmiller
    State Bar No. 24031889
    S.D. Texas: 30079
    4200 Montrose, Suite 300
    Houston, Texas 77006
    (512) 368-8183 (Telephone)
    (832) 442-5430 (Facsimile)
    randy@greatlaw.com

**ATTORNEYS FOR DEFENDANT
SPARK BIOMEDICAL, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record through (i) this court's ECF method, (ii) facsimile, and/or (iii) via the United States Postal Service, on this 15th day of February, 2026.

    ____/s/ *Randy Bruchmiller*_____
    Randy J. Bruchmiller